# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TIFFANY STORM,

        Plaintiff,

                                                Case No. 2025-cv-

                                                Hon.

-vs-

JUDSON CENTER FOUNDATION,
JUDSON CENTER STAFFING SOLUTIONS, INC., and
JUDSON CENTER, INC., d/b/a JUDSON CENTER,

        Defendants.

---

JONATHAN R. MARKO (P72450)
NICHOLE A. OMILION (P86380)
**MARKO LAW, PLLC**
Attorney for Plaintiff
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
nichole@markolaw.com

---

There is no other civil action between these parties arising
out of the same transaction or occurrence as alleged in this
Complaint pending in this Court, nor has any such action
been previously filed and dismissed or transferred after
having been assigned to a judge, nor do I know of any
other civil action, not between these parties, arising out of
the same transaction or occurrence as alleged in this
Complaint that is either pending or was previously filed
and dismissed, transferred or otherwise disposed of after
having been assigned to a Judge in this Court.

---

## <u>COMPLAINT</u>

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

NOW COMES the above-named Plaintiff, TIFFANY STORM, by and through her attorneys, MARKO LAW, PLLC, and for her Complaint against the above-named Defendants, states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is proper because the amount in controversy exceeds this Court's jurisdictional limit, not including costs, interests, and attorney fees.

2. Plaintiff Tiffany Storm ("STORM") is a 43-year-old woman residing in the City of Madison Heights, County of Oakland, State of Michigan.

3. Defendant Judson Center Foundation, Judson Center Staffing Solutions, Inc., and Judson Center, Inc., d/b/a Judson Center ("JUDSON CENTER"), is a domestic nonprofit corporation located and conducting business at 30301 Northwestern Highway, Suite 100, Farmington Hills, Michigan, 48334.

4. Plaintiff was employed by Defendant and the actions giving rise to this Complaint occurred in the City of Farmington Hills, County of Oakland, State of Michigan.

5. This action arises under 29 U.S.C. 28, 28 USC 121101, 29 U.S.C. 1391(b)(2), MCL 37.1101, and jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1367.

## FACTUAL ALLEGATIONS

6. Plaintiff, by reference, incorporates the preceding paragraphs of her Complaint as though fully set forth herein.

7. Plaintiff began her employment with Defendants on October 31, 2022, as full time Supervisor-Case Manager in the Families Together Building Solutions program, reporting to Shevera Lopez.

8. Defendant Judson Center is engaged in providing comprehensive, expert services to children, adults, and families that have been impacted by abuse, autism, developmental disabilities, and mental health challenges across the State of Michigan.

9. Defendant Judson Center is large company with over 50 employees.

10. On or around August 2023, Plaintiff Storm was diagnosed with breast cancer.

11. On or around August 2023, Plaintiff Storm applied for leave under the Family and Medical Leave Act ("FMLA") so that she could treat her cancer, which the application was approved.

12. Defendant approved Plaintiff's FMLA leave from October 31, 2023, through January 23, 2024, for twelve weeks of unpaid leave.

13. On November 27, 2023, Plaintiff requested, from Judson Center, an accommodation to work remotely due to her ongoing chemotherapy treatment, when she returned to work, and notified her supervisor of her request.

3

14. Defendant, including Plaintiff's supervisor were aware that Plaintiff required an accommodation due to breast cancer and her ongoing treatment. Plaintiff directly informed them of such request.

15. Plaintiff's breast cancer substantiality limited her ability to perform daily tasks and work, as she required substantial treatment including chemotherapy.

16. On November 28, 2023, Defendants' human resources manager, Nodja Mosley, informed Plaintiff that her Oncologist would need to complete and submit documentation for an extension of leave.

17. On December 05, 2023, Plaintiff Storm submitted her Oncologist's documentation to Nodja Mosley, to which Plaintiff was informed she would be contacted once the documents have been reviewed.

18. On January 02, 2024, Plaintiff Storm received an email from Nodja Mosley, wherein Plaintiff was informed that her position was no longer protected and that she would need to re-apply for a different position. Defendant Judson Center's human resources manager, Nodja Mosley, stated there were discrepancies within her paperwork, though she failed to bring any discrepancies to Plaintiff Storm's attention or ask for supplemental documentation.

19. On February 6, 2024, Defendants sent Plaintiff a letter informing her that her FMLA leave was exhausted as of January 23, 2024, and that Defendants could

4

not accommodate her request to work remotely because no positions were available that were fully remote.

20. Defendants assertions that no positions were available that were fully remote are false, as Plaintiff's prior position was fully remote and the position she was forced into had other employees in the same or similar circumstances working remotely.

21. On January 08, 2024, Plaintiff received a company-wide email while on leave from the Defendants Director of Family Preservation and AFPRR, Shevera Lopez, stating that Plaintiff Storm's position has been filled by Christal Jackson.

22. On or around March 28, 2024, Plaintiff was rehired by the Defendant into a subordinate position as Foster Care Licensing Specialist, in the Dearborn department under supervisor, Cynznitra Culver, with duties beginning on April 22, 2024.

23. The Foster Care Licensing Specialist position lacked the supervisory responsibilities, remote options, and benefits that Plaintiff had held in her previous role, and is not equivalent to her prior position.

24. On or around May 23, 2024, Plaintiff Storm submitted medical documentation to formally request accommodation to allow Plaintiff to work remotely for ninety (90) days.

5

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

25. Plaintiff Storm's accommodation request was reasonable as she worked remotely in her prior position, and employees in the same or similar position as her were allowed to work remotely.

26. On or around May 23, 2024, Defendant Judson Center denied Plaintiff Storm's accommodation request.

27. Defendant Judson Center failed to provide any reasonable accommodation to Plaintiff at any point during Plaintiff's employment.

28. On May 30, 2024, Plaintiff attended a virtual meeting wherein her supervisor was present.

29. On or around May through June of 2024, Plaintiff had bi-weekly supervision meetings with her supervisor wherein there was no mention of failure to be present for her shift or any issue related to Plaintiff's work performance and/or conduct.

30. On June 5, 2024, Plaintiff received an email from her supervisor verifying that she was present and working.

31. On June 13, 2024, Plaintiff attended a bi-weekly meeting with her supervisor at approximately 11:10 a.m., during which there was no mention of any performance issues. Both parties signed Defendant's supervision form.

32. Between June 23 and June 25, 2024, Plaintiff corresponded with her supervisor regarding a report that Plaintiff had completed and the supervisor's feedback on the report.

33. During the period from May 24, 2024, through June 26, 2024, Plaintiff was paid her full salary and accrued paid time off.

34. On June 26, 2024, Defendants' Chief Human Resources Officer, Kenya Martin, sent Plaintiff a termination letter stating that Defendants could not accommodate her request to work from home, citing a "significant lack of productivity" and inability to perform duties from home, and terminating Plaintiff's employment effective immediately.

35. Plaintiff never received any written warning, disciplinary action, or corrective action plan from Defendants prior to her termination.

36. Upon information and belief, Plaintiff was terminated in retaliation for exercising her rights under the Family and Medical Leave Act, Americans with Disabilities Act, and Michigan Persons with Disabilities Rights Act (PDCRA) and for requesting reasonable accommodations under the Americans with Disabilities Act and the Michigan Persons with Disabilities Rights Act.

37. Upon information and belief, Plaintiff was discriminated against for her disability in violation of the Americans with Disabilities Act (ADA) and the Michigan Person with Disabilities Rights Act (PDCRA).

38. Upon information and belief, Plaintiff was terminated in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.,* The Family Medical Leave Act 29 U.S.C. 28, and The Michigan Persons with Disabilities Rights Act MCL 37.1101.

39. As a result of Defendants actions and/or omissions, Plaintiff has suffered and will continue to suffer damages, including but not limited to:

   a. Termination of Employment;

   b. Loss of benefits;

   c. Stress;

   d. Humiliation;

   e. Outrage;

   f. Mental Anguish;

   g. Emotional Damages;

   h. Economic Damages;

   i. Non-economic Damages;

   j. Other damages to be discovered through the course of discovery.

**COUNT I – VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. 28**

*(FMLA Retaliation)*

40. Plaintiff, by reference, incorporates the preceding paragraphs of her Complaint as though fully set forth herein.

41. Plaintiff was an eligible employee within the coverage of the Family and Medical Leave Act, 29 U.S.C. 28.

42. Defendant was an employer within the coverage of the Family and Medical Leave Act, 29 U.S.C. 28.

43. Plaintiff was eligible for qualified leave under the Family and Medical Leave Act to treat her serious medical condition of breast cancer.

44. Plaintiff applied for and was granted leave under the Family and Medical Leave Act by Defendants.

45. Plaintiff was on approved leave under the Family and Medical Leave Act from October 31, 2023, through January 23, 2024.

46. Plaintiff was unable to return to work as planned on January 23, 2024, as Defendants re-assigned and/or hired another employee to take over Plaintiff's position prior to her leave being over.

47. Plaintiff was forced to apply for another position in order to return to her employment with Defendants.

48. The position that was offered to Plaintiff upon her return lacked the benefits she received in her previous role of supervisor, including but not limited to FMLA leave, remote work, and lack of a supervisory role.

49. Defendant retaliated against Plaintiff for exercising her rights under the Family and Medical Leave Act, including but not limited to, re-assigning Plaintiff's position to another employee while on leave, subjecting Plaintiff to reapply for employment with Defendants, failing to place Plaintiff back into the same or equivalent supervisory role, and terminating Plaintiff's employment when she returned from leave.

50. Due to Defendants' retaliation, including re-assigning Plaintiff's position, subjecting Plaintiff to work in a lower position with fewer benefits, and her termination, Plaintiff has suffered a loss of both income and benefits

51. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff continues to suffer serious damages.

## COUNT II – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Discrimination/Disparate Treatment)

52. Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully stated herein.

53. Defendant is an employer within the coverage of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.* ("ADA").

54. Plaintiff was at all times relevant hereto an employee, within the coverage of the ADA.

55. Plaintiff suffers from a disability as defined by the ADA.

56. Specifically, Plaintiff was diagnosed with breast cancer, and at all times relevant hereto, received chemotherapy during her approved leave.

57. Defendants, including Plaintiff's supervisor, were aware of her disability. Plaintiff told numerous supervisors about her disability and her limitations.

58. Plaintiff's breast cancer substantiality limited her ability to perform daily tasks and work.

59. Defendants discriminated against Plaintiff based on her disability and/or a perception of her as disabled.

60. Defendant's discrimination against Plaintiff was done with malice and/or with reckless indifference to her federally protected rights.

61. Defendant's conduct violates the ADA.

62. In addition to discriminating against Plaintiff because of her disability and/or perception of her as disabled, Defendants retaliated against Plaintiff by, among other things, re-assigning her position to another employee, not restoring her to the same or substantially similar position, and instead terminating her employment, in violation of the ADA.

63. As a direct and proximate cause of Defendant's violation of the ADA, Plaintiff has suffered and continues to suffer damages.

## COUNT III-VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Failure to Accommodate)

64. Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully stated herein.

65. Defendant is an employer within the coverage of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.* ("ADA").

66. Plaintiff was at all times relevant hereto an employee, within the coverage of the ADA.

67. Plaintiff suffers from a disability as defined by the ADA.

68. Specifically, Plaintiff was diagnosed with breast cancer, and at all times relevant hereto, received chemotherapy during her approved leave.

69. Defendants, including Plaintiff's supervisor, were aware of her disability. Plaintiff told numerous supervisors about her disability and her limitations.

70. Plaintiff's breast cancer substantially limited her ability to perform daily tasks and work.

71. Plaintiff requested a reasonable accommodation to work fully remote during her chemotherapy treatment.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

JM MARKO LAW

72. Plaintiff's request was reasonable as other employees in Plaintiff's same or similar position were allowed to work remotely. Additionally, Plaintiff's prior role as a supervisor was remote.

73. Defendants failed to provide Plaintiff with any reasonable accommodation for Plaintiff's disability.

74. Defendant's conduct violates the ADA.

75. As a direct and proximate cause of Defendant's violation of the ADA, Plaintiff has suffered and continues to suffer damages

## COUNT IV-VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Retaliation)

76. Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully stated herein.

77. Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully stated herein.

78. Defendant is an employer within the coverage of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.* ("ADA").

79. Plaintiff was, at all times relevant hereto, an employee within the coverage of the ADA.

80. Plaintiff suffers from a disability as defined by the ADA.

81. Specifically, Plaintiff was diagnosed with breast cancer, and at all times relevant hereto, received chemotherapy during her approved leave.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

82. Defendants, including Plaintiff's supervisor was aware of her disability. Plaintiff told numerous supervisors about her disability and her limitations.

83. Plaintiff's breast cancer substantiality limited her ability to perform daily tasks and work.

84. Plaintiff requested a reasonable accommodation to work fully remote during her chemotherapy treatment.

85. Defendants retaliated against Plaintiff by among other reassigning her position to another employee, not restoring her to the same or equivalent position, failing to accommodate for her disability, and instead terminating her employment, in violation of the ADA.

86. Defendant's conduct violates the ADA.

87. As a direct and proximate cause of Defendant's violation of the ADA, Plaintiff has suffered and continues to suffer damages

## COUNT V- VIOLATON OF PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### (Discrimination/Disparate Treatment)

88. Plaintiff by reference incorporates the preceding paragraphs of her Complaint as though fully set forth herein.

89. The Michigan Persons with Disabilities Civil Rights Act (PDCRA) prohibits a covered "person" from not accommodating a person with a disability for "purposes of employment, public accommodation, public service, education,

14

or housing unless the person demonstrates that the accommodation would impose an undue hardship." MCL § 37.1102.

90. As an employer and "person" defined by MCL § 37.1103(g), Defendant is subject to the PDCRA.

91. 77. Plaintiff has a disability that is covered by PDCRA and is covered by the Act.

92. 78. Specifically, Plaintiff has breast cancer that substantially limited her ability to perform daily tasks and work.

93. Plaintiff made Defendants, including her supervisor, aware of her disability and limitations.

94. Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of Plaintiff's disability and acted in accordance with that predisposition.

95. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated employees based on unlawful consideration of her disability, by including but not limited to refusing to allow her to work remotely when other employees in similar positions were allowed.

96. The Defendants' failure to allow Plaintiff to work remotely negatively impacted on her ability to do her work tasks and assignments.

15

97. Defendant's actions were intentional in disregard of Plaintiff's rights and sensibilities.

98. By subjecting Plaintiff to disability discrimination on account of her disability, Defendants' acts and omissions created a hostile environment, depriving Plaintiff of a safe and reliable employment environment.

99. The foregoing violations caused substantial damages to Plaintiff as alleged herein, including loss of both income, benefits, and emotional damages.

100.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff continues to suffer serious damages.

## COUNT VI- VIOLATON OF PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### (Failure to Accommodate)

101.     Plaintiff by reference incorporates the preceding paragraphs of her Complaint as though fully set forth herein.

102.     The Michigan Persons with Disabilities Civil Rights Act (PDCRA) prohibits a covered "person" from not accommodating a person with a disability for "purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." MCL § 37.1102.

103.     As an employer and "person" defined by MCL § 37.1103(g), Defendant is subject to the PDCRA.

16

104.     Plaintiff has a disability that is covered by PDCRA and is covered by the Act.

105.     Specifically, Plaintiff has breast cancer that substantially limited her ability to perform daily tasks and work.

106.     Plaintiff made Defendants, including her supervisor, aware of her disability and limitations.

107.     Plaintiff requested a reasonable accommodation to work remotely, as other employees in same or similar positions worked remotely.

108.     Defendant failed to provide any reasonable accommodation to Plaintiff, and failed to show that the requested accommodation would be a substantial burden on Defendant.

109.     Defendant's actions were intentional in disregard of Plaintiff's rights and sensibilities.

110.     By subjecting Plaintiff to disability discrimination on account of her disability and failing to accommodate, Defendants' acts and omissions created a hostile environment, depriving Plaintiff of a safe and reliable employment environment.

111.     The foregoing violations caused substantial damages to Plaintiff as alleged herein, including but not limited to loss of income, benefits, and emotional damages.

17

112.     As a direct and proximate result of Defendants' acts and/or omissions,

Plaintiff continues to suffer serious damages.

## COUNT VI- VIOLATON OF PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### (Retaliation)

113.     Plaintiff by reference incorporates the preceding paragraphs of her

Complaint as though fully set forth herein.

114.     The Michigan Persons with Disabilities Civil Rights Act (PDCRA)

prohibits a covered "person" from not accommodating a person with a

disability for "purposes of employment, public accommodation, public

service, education, or housing unless the person demonstrates that the

accommodation would impose an undue hardship." MCL § 37.1102.

115.     As an employer and "person" defined by MCL § 37.1103(g), Defendant

is subject to the PDCRA.

116.     Plaintiff has a disability that is covered by PDCRA and is covered by

the Act.

117.     Specifically, Plaintiff has breast cancer that substantially limited her

ability to perform daily tasks and work.

118.     Plaintiff made Defendants, including her supervisor, aware of her

disability and limitations.

119.     Plaintiff requested a reasonable accommodation to work remotely, as other employees in same or similar positions worked remotely.

120.     Defendant failed to provide any reasonable accommodation to Plaintiff or demonstrate that Plaintiff's requested accommodation would cause a substantial hardship to Defendant.

121.     Defendants retaliated against Plaintiff by among other re-assigning her position to another employee, not restoring her to the same or equivalent position, failing to accommodate for her disability, and instead terminating her employment, in violation of the Persons With Disabilities Civil Rights Act.

122.     Defendant's conduct violates the Persons With Disabilities Civil Rights Act.

123.     The foregoing violations caused substantial damages to Plaintiff as alleged herein, including but not limited to loss of income, benefits, and emotional damages.

124.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff continues to suffer serious damages.

### 125.      **DAMAGES**

126.     Plaintiff, by reference, incorporates the preceding paragraphs of her Complaint as though fully set forth herein.

127.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered injuries resulting in damages including, but not limited to:

    a.  Emotional distress;

    b.  Loss of income and benefits;

    c.  Pain and suffering;

    d.  Exemplary damages;

    e.  An award of punitive damages;

    f.  Reasonable attorney fees and costs;

    g.  All other such relief which appears reasonable and just under the circumstances.

101. Plaintiff has suffered the above-described physical pain and suffering as well as mental anguish, fright and shock, denial of social pleasure and enjoyment and embarrassment, humiliation, and mortification, all of which are serious, permanent, and disabling.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court GRANT judgment in favor of Plaintiff and against Defendants in an amount the Court or jury deems just and fair, plus interest, costs, and attorney fees.

Respectfully submitted,

*/s/ Nichole A. Omilion*
Nichole A. Omilion (P86380)
**MARKO LAW, PLLC**

20

220 W Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Dated: December 23, 2025        Email: nichole@markolaw.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TIFFANY STORM,

          Plaintiff,                              Case No. 2025-cv-

                                                              Hon.

-vs-

JUDSON CENTER FOUNDATION,
JUDSON CENTER STAFFING SOLUTIONS, INC., and
JUDSON CENTER, INC., d/b/a JUDSON CENTER,

          Defendants.

---

JONATHAN R. MARKO (P72450)
NICHOLE A. OMILION (P86380)
**MARKO LAW, PLLC**
Attorney for Plaintiff
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7529 / F: (313) 470-2011
nichole@markolaw.com

---

## <u>JURY DEMAND</u>

NOW COMES Plaintiff Tiffany Storm, by and through their attorneys, MARKO LAW,

PLLC, and hereby demands a trial by jury in the above-captioned matter.

                                              Respectfully submitted,

                                              */s/ Nichole A. Omilion*
                                               Nichole A. Omilion (P86380)
                                             Attorney for Plaintiff
                                             **MARKO LAW, PLLC**
                                             1300 Broadway Street, Fifth Floor
                                             Detroit, MI  48226

Dated:  December 23, 2025

(313) 777-7777 / FAX: (313) 771-5785
Email: nichole@markolaw.com

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW